UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN ROSADO,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 3:18-cv-00265-H-KSC<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT**<br><br>[Doc. No. 11] |

On August 23, 2018, Defendants County of San Diego and San Diego Sheriff's Deputies Does 1 through 10 (collectively, "Defendants") filed a motion for summary judgment. (Doc. No. 11.) On February 5, 2019, Plaintiff Glenn Rosado ("Plaintiff") filed an opposition to the motion for summary judgment. (Doc. No. 24.) On February 12, 2019, Defendants filed a reply. (Doc. No. 29.) On February 19, 2019, the Court held a hearing. (Doc. No. 16.) Keith Howard Rutman appeared on behalf of Plaintiff and James M. Chapin appeared on behalf of Defendants. (Doc. No. 30.) For the reasons below, the Court grants Defendants' motion for summary judgment.

1

## Background

Plaintiff, an Internal Revenue Service ("IRS") employee, asserts a § 1983 claim as well as state law claims for damages based on his detention by San Diego Sheriff's deputies following a citizen report of a tax scam. (See Doc. No. 5.) Defendants contend that the deputies are entitled to qualified immunity and that no Fourth Amendment violation occurred. (Doc. No. 11-1 at 4–8.)

On September 22, 2017, around 2:45 p.m., Defendants Deputy James Steinmeyer ("Deputy Steinmeyer"), Deputy Tony Keller ("Deputy Keller"), and Deputy Jason Wade ("Deputy Wade"), responded to a citizen complaint at an automotive shop. (Doc. No. 11-1 at 3, 14, 18.) There, the shop's owner alleged that Plaintiff was claiming to be an IRS agent and was demanding money from him. (Doc. No. 11-2 at 8.) The deputies arrived at the owner's office at 3:03 p.m. and Plaintiff was released soon after 4:44 p.m. (See Doc. Nos. 11-1 at 3; 24-20 at 3; 24-24 at 7.)

The deputies detained Plaintiff while they conducted an investigation. Over the course of their investigation, the deputies took a number of actions to confirm whether or not Plaintiff worked for the IRS. Deputy Steinmeyer reviewed Plaintiff's identification, called Plaintiff's supervisor and an IRS Treasury Inspector General for Tax Administration agent ("Agent Munoz"), called his federal contact Deputy Perata, called his Sheriff's Department's Financial Crimes Division contact Deputy Moe, and questioned both the owner and Plaintiff. (Doc. No. 11-2 at 7–11.) Deputy Wade searched the internet to obtain a sample IRS identification card, and then he called the IRS for over 30 minutes until he was able to verify that Plaintiff was an IRS employee. (Id. at 15.) Deputy Keller questioned the owner, relayed the owner's answers to Deputy Steinmeyer, and searched Google for the IRS address on documents Plaintiff provided, but he could not verify the address. (Id. at 9, 18–19.)

Throughout the investigation, facts emerged that increased the deputies' suspicions that Plaintiff was perpetuating a scam. Plaintiff showed his IRS identification, but would not give possession of it to the deputies until Deputy Steinmeyer took it from him. (Doc.

No. 11-2 at 8.) He also provided a Florida license though he lived in California.[1] (Id.) In addition, to the deputies he appeared to be "extremely nervous," his voice shook, he was visibly shaking, and he rarely made eye contact. (Id.) Plaintiff explained that his training officer was at the location earlier with him, but had already left, and that he drove his own vehicle to the location rather than the usual IRS vehicle. (Id. at 9–10.) The owner told the deputies that Plaintiff told him "to go to the bank and get cash out and bring it to him." (Id. at 9.) Plaintiff asserts that he never demanded to be paid in cash, but that he did inform the owner that cash payment was an acceptable option. (Doc. No. 24-2 at 4.) The owner explained that he was suspicious of Plaintiff because he did not have tax debt.[2] (Id. at 11.) In addition, "he had been receiving phone calls from someone claiming to be from the IRS and threating if he did not pay $14,000 immediately, things would get worse," and that, after these calls, he received a letter from Plaintiff demanding payment. (Id.) In conducting their investigation, the deputies were unable to verify on the internet the IRS address on documents Plaintiff provided, Plaintiff's name did not appear to belong to an IRS.gov domain email, and Plaintiff's name did not appear in a database which was supposed to contain a complete list of federal employees. (Id. at 9.)

At approximately 4:14 p.m., Deputy Perata called Deputy Steinmeyer and gave him the contact information of Agent Munoz. (Id. at 11.) Deputy Steinmeyer called Agent Munoz again, who picked up his phone. (Id.) At approximately 4:30 p.m., Deputy Steinmeyer handed Plaintiff the phone to speak with Agent Munoz who asked him several identity-verification questions. (Doc. No. 24-2 at 4.) Deputy Steinmeyer took a photo of Plaintiff and sent it to Agent Munoz. (Doc. Nos. 11-2 at 11; 24-2 at 4.) Agent Munoz

---

[1] The California Vehicle Code requires that an individual who has been a resident of California for more than ten days must obtain a driver's license before operating a motor vehicle, subject to exceptions. See Cal. Veh. Code § 12505 (c).

[2] The IRS records erroneously showed that the owner had a tax debt. (Doc. No. 24-2 at 4–5.) The error occurred because the owner had recently reorganized his business and was assigned a new employer identification number ("EIN"). (Id.) In completing the business's taxes, the shop's bookkeeper assigned the tax payment to the new EIN number rather than the old EIN number under which the tax liability had been incurred. (Id.)

confirmed that Plaintiff was an IRS employee. (Doc. Nos. 11-2 at 11; 24-2 at 3.) Plaintiff was released soon after 4:44 p.m. (See Doc. No. 24-24 at 7.)

Plaintiff filed suit on February 5, 2018, asserting that Defendants subjected him to an unreasonable seizure, were negligent, and falsely arrested him. (Doc. Nos. 1 at ¶¶ 22–36; 5 at ¶¶ 28–36.) Defendants filed a motion for summary judgment, arguing that their detainment of Plaintiff was reasonable and that the deputies who detained Plaintiff are entitled to qualified immunity. (Doc. No. 11-1 at 4–8.)

## Discussion

### I. Legal Standards for Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322–23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a

genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256. Questions of law are well-suited to disposition via summary judgment. See, e.g., Pulte Home Corp. v. Am. Safety Indem. Co., 264 F. Supp. 3d 1073, 1077 (S.D. Cal. 2017).

When ruling on a summary judgment motion, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The Court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. "The evidence of the non-movant is to be believed." Id. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

## II. Analysis

### A. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. (Doc. No. 11 at 6–8.) "Qualified immunity shields a police officer from suit under § 1983 unless (1) the officer violated a statutory or constitutional right, and (2) the right was clearly established at the time of the challenged conduct." Thomas v. Dillard, 818 F.3d 864, 874 (9th Cir. 2016) (citations omitted). When considering these two prongs, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." Tolan v. Cotton, 134 S. Ct. 1861, 1866 (2014). The Court has discretion to determine which of these two prongs to address first. Pearson v. Callahan, 555 U.S. 223, 236 (2009); Mattos v. Agarano, 661

F.3d 433, 440 (9th Cir. 2011).

**1. Clearly Established Law**

The Court first turns to whether the asserted constitutional right was clearly established at the time of the deputies' alleged misconduct. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). The inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," especially in the Fourth Amendment context, where "[i]t is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confronts." Id. (citations and internal quotation marks omitted). Put another way, only the "plainly incompetent" officer will not enjoy qualified immunity. Id. (citation omitted).

The Supreme Court and the Ninth Circuit have stressed that clearly established law should not be defined at a high level of generality. See White v. Pauly, 137 S. Ct. 548 (2017); S.B. v. Cty. of San Diego, 864 F.3d 1010 (9th Cir. 2017). In S.B., the district court determined that inconsistencies in officer testimony created a triable dispute over whether the officer's conduct violated clearly established law, but the court did not identify a clear precedent barring the officer from using deadly force under the circumstances. 864 F.3d at 1013. The Ninth Circuit reversed the district court, explaining that the court must "identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." Id. at 1015 (quoting White, 137 S. Ct. at 552). The Ninth Circuit could not find such a case, and the court determined that the case did not involve an "obvious" or "run-of-the-mill" constitutional violation. Id. at 1016. The officer was therefore entitled to qualified immunity. Id. at 1016–17.

Here, Plaintiff argues that he was subjected to an unreasonable detention. However, Plaintiff does not identify a case where an officer, acting under similar circumstances, was held to have violated the Fourth Amendment. (See Doc. No. 24 at 32); Shafer v. County of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017) ("It is the plaintiff who bears the

6

burden of showing that the rights allegedly violated were clearly established." (internal quotations and citations omitted)).

Nor can the Court identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. In this case, the deputies pursued multiple means of investigation that would confirm or dispel their suspicions that Plaintiff was not an IRS employee. Deputy Steinmeyer reviewed Plaintiff's identification, he called Plaintiff's supervisor, Agent Munoz, Deputy Perata, and Deputy Moe, and he questioned both the owner and Plaintiff. (Doc. No. 11-2 at 7–11.) Deputy Wade attempted to verify Plaintiff's IRS identification card, and then he called the IRS for over thirty minutes to verify that Plaintiff was an IRS employee. (Id. at 15.) Deputy Keller questioned the owner, relayed the owner's answers to Deputy Steinmeyer, and searched Google for the IRS address on the documents Plaintiff provided, but he could not verify the address. (Id. at 9, 18–19.) As the investigation proceeded, the deputies uncovered facts that increased their suspicions that Plaintiff was not an IRS employee. For example, the deputies uncovered that Plaintiff had Florida identification despite living in California, (Doc. No. 11-2 at 8); that the owner alleged that he did not have tax debt and that he had been receiving threatening calls allegedly from the IRS, (id. at 9–11); and that Plaintiff's name did not appear under an IRS.gov domain email and did not appear in a database which was supposed to contain a complete list of federal employees, (id. at 9). Considering this set of facts, the Court cannot identify "a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment." S.B., 864 F.3d at 1015 (quoting White, 137 S. Ct. at 552).

Moreover, the Court cannot conclude that Defendants' detention of Plaintiff was an "obvious" violation of his constitutional rights. S.B., 864 F.3d at 1016–17. "In assessing whether a detention is too long in duration to be justified as an investigative stop" a court must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." United States v. Sharpe, 470 U.S. 675, 686 (1985). The U.S.

Supreme Court warned against "unrealistic second-guessing" and stressed that "the fact that the protection of the public might, in the abstract, have been accomplished by less intrusive means does not, itself, render the search unreasonable." Id. at 687 (citations, internal quotations, and brackets omitted); see also Gallegos v. City of Los Angeles, 308 F.3d 987, 992 (9th Cir. 2002) ("The Fourth Amendment does not mandate one and only one way for police to confirm the identity of a suspect. It requires that the government and its agents act reasonably.")

In addition, there is no bright-line time limitation on the permissible length of detentions. Sharpe, 470 U.S. at 685; see also United States v. Richards, 500 F.2d 1025, 1029 (9th Cir. 1974) (holding that an over-hour-long detention was lawful where officers attempted to clarify the situation by calling FAA concerning ownership of an aircraft at issue, and by telephoning other individuals to check on the detained individuals' proffered identifications and explanations); Gallegos, 308 F.3d at 992 (holding that a 45-minute to one-hour detention to identify an individual was lawful, despite the fact that the officers did not look at the individual's license and registration, because officers chose another procedure that was "virtually certain" to resolve the situation); United States v. McCarthy, 77 F.3d 522, 531 (1st Cir. 1996) (holding that a 75-minute detention was lawful because the "excessive length of [the] detention arose not because the officers engaged in dilatory tactics, but, instead, because their investigative efforts, though reasonable under the circumstances, failed to dispel the suspicion that gave rise to the stop); Foley v. Kiely, 602 F.3d 28, 32–33 (1st Cir. 2010) (holding that an hour-long detention was "not problematic" because the "delay was largely caused by the troopers' attempts to confirm [a] warrant's validity."); United States v. Maltais, 403 F.3d 550, 557–58 (8th Cir. 2005) (holding that a 2-hour and 55-minute detention was lawful under the circumstances); United States v. Salgado, 761 F.3d 861, 866 (8th Cir. 2014) (holding an hour-long detention was lawful because the length of detention was "attributable to the remote location, not to any lack of diligence or unnecessary delay by law enforcement"); United States v. Paetsch, 782 F.3d 1162, 1175–76 (10th Cir. 2015) (holding that a 90-minute detention was lawful where

8

3:18-cv-00265-H-KSC

officers had individualized suspicion over 20 vehicles and were awaiting the arrival of a homing beacon to locate a tracker).

This case does not present an "obvious" violation of Plaintiff's constitutional rights. S.B., 864 F.3d at 1016–17. The deputies pursued multiple means of confirming or dispelling their suspicions that Plaintiff was not an IRS employee and, throughout the investigation, uncovered facts that required further investigation. Under these circumstances, the Court cannot conclude that Plaintiff's rights were obviously violated. S.B., 864 F.3d at 1016–17. Given that Plaintiff cannot show a violation of his rights according to clearly established law, the Defendant Sheriff's Department deputies are entitled to qualified immunity as to Plaintiff's § 1983 claim.

### 2. Whether Plaintiff's Constitutional Rights Were Violated

Although the deputies' entitlement to qualified immunity is a dispositive issue as to Plaintiff's § 1983 claim, the Court also addresses whether the deputies violated Plaintiff's constitutional rights under the Fourth Amendment. Thomas, 818 F.3d at 874. The Fourth Amendment allows officers to conduct a brief investigatory stop if there is a reasonable, articulable suspicion supporting the action. Terry v. Ohio, 392 U.S. 1, 21 (1968). "There is no bright line rule for determining when an investigatory stop crosses the line and becomes an arrest." Gallegos, 308 F.3d at 991 (internal citations and quotations omitted). Instead, the court must consider whether the detention was reasonable under the Fourth Amendment. Id. "This inquiry requires [the court] to consider all the circumstances surrounding the encounter between the individual and the police . . . by evaluating not only how intrusive the stop was, but also whether the methods used by police were reasonable given the specific circumstances." Id. (internal citations, quotations, and brackets omitted). The court considers "the extent to which liberty of movement is curtailed and the type of force or authority employed." United States v. Torres-Sanchez, 83 F.3d 1123, 1127 (9th Cir. 1996). However, there is no rigid time limitation on investigative stops. Sharpe, 470 U.S. at 685. Instead, when assessing whether a detention is too long to be justified as an investigative stop, a court must "examine whether the police diligently pursued a means of

investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." Id. at 686.

Considering the detention as a whole, the Court concludes that the investigatory stop was reasonable. The deputies detained Plaintiff from approximately 3:03 p.m. to soon after 4:44 p.m. (See Doc. Nos. 11-1 at 3; 24-20 at 3; 24-24 at 7.) During this time, they sought to confirm that Plaintiff was an IRS employee. See Gallegos, 308 F.3d at 991 ("The whole point of an investigatory stop, as the name suggests, is to allow police to investigate . . . ." (italics omitted)). The deputies took a number of actions to confirm or dispel their suspicions, including calling individuals who could verify whether Plaintiff worked for the IRS[3] and checking whether Plaintiff's name appeared in a federal database or under an IRS.gov domain email. The Court also notes that during the investigation Plaintiff was not handcuffed and not moved to another location. Moreover, the length of the detention was further justified by facts uncovered during the investigation that required further investigation to determine whether or not Plaintiff was an IRS employee. See Richards, 500 F.2d at 1029. Shortly after the deputies confirmed that Plaintiff was an IRS employee, they released him. (See Doc. Nos. 11-2 at 11; 24-24 at 7; 24-27 at 12.) Accordingly, the Court concludes that the deputies performed a reasonable investigatory stop, and Plaintiff's constitutional rights under the Fourth Amendment were not violated. The Court appreciates that Plaintiff was simply doing his job when he was detained and recognizes that the deputies were doing the same.

**B. California State Law Claims**

Plaintiff also asserts two state law claims under California law, a negligence claim and a false arrest claim. (Doc. No. 5 at ¶¶ 28–36.) "Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]"

---

[3] Plaintiff notes that he never received requested telephone records that would confirm Deputy Steinmeyer made the calls to the numbers provided by Plaintiff for Plaintiff's supervisor and Agent Munoz. (Doc. No. 24-3 at 4.) The Court notes that, supposing that Deputy Steinmeyer did not call the numbers Plaintiff provided him, given that Deputy Steinmeyer suspected Plaintiff was perpetuating a scam, such an approach might be prudent if the numbers could not be independently verified first.

Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). A district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. See 28 U.S.C. § 1367 (c)(3). Given that the Court has dismissed Plaintiff's federal § 1983 claim against the Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

## Conclusion

Based on the foregoing, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's § 1983 claim against Defendant Sheriff's Department deputies. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.

**IT IS SO ORDERED.**

DATED: February 21, 2019

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT